UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DESHAWN DANIELS,

                Plaintiff,

-v-

CITY OF NEW YORK & JOHN DOES # 1-5,

                Defendants.

---

No. 18-CV-3717 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Deshawn Daniels brings this action under 42 U.S.C. §§ 1981 and 1983 against the City of New York and five John Doe officers for alleged violations of his constitutional rights arising out of a March 18, 2015 traffic stop. Defendant the City of New York moves to dismiss the Amended Complaint on the ground that some of Plaintiff's claims are time-barred and the rest fail to state a claim.[1] Plaintiff has filed a "cross-motion" for equitable tolling. For the reasons that follow, Defendant's motion is granted in part and denied in part. Plaintiff's motion is denied.

## BACKGROUND

The following facts, taken from the Amended Complaint, are accepted as true for the purposes of this motion to dismiss. On March 18, 2015, Plaintiff, a black man in his thirties, was pulled over by undercover police officers stationed near the corner of 148th Street and Adam Clayton Powell Jr. Boulevard in Manhattan. Am. Compl. at ¶¶ 29, 39, 41. The officers told Plaintiff that he was "being booked" for making an illegal left turn approximately seven blocks

---

[1] Since "courts typically resist dismissing suits against John Doe defendants until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials," *Coward v. Town & Vill. of Harrison*, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009) (internal quotation marks and brackets omitted), the Court will not dismiss the John Doe defendants *sua sponte* at this time. Plaintiff—who is counseled—is ordered to promptly seek to identify and serve the John Doe defendants and to update the Court no later than April 29, 2019.

north of where he was pulled over. *Id.* at ¶ 48. They asked Plaintiff to step out of his vehicle. *Id.* at ¶ 47. They then allegedly opened his car door, pulled him out of his car, and searched his vehicle without his consent. *Id.* at ¶ 50. One officer asked him, "How you own a Mercedes convertible?" *Id.* at ¶ 51.

The officers brought Plaintiff back to the local precinct and placed him in a cell for two to three hours. *Id.* at ¶¶ 52, 55. They then told him they had to perform a strip search. *Id.* at ¶ 53. They required him to remove all of his clothing except his underwear, handcuffed him, and held him down on a table. *Id.* at ¶¶ 56–57. They searched him, and one of the officers attempted to conduct an anal cavity check while wearing an unlubricated latex glove. *Id.* at ¶ 61. Plaintiff turned his backside against the wall so that the officer could not perform the cavity check. *Id.* at ¶ 62. The officers then allegedly picked up Plaintiff, slammed him onto the table, and twisted his arm, causing his arm to bleed. *Id.* at ¶ 63–65. According to Plaintiff, he screamed in pain, while three or four officers held him down on the table. *Id.* at ¶ 65. The officers then told Plaintiff to put his clothes back on and they put him back in his cell. *Id.* at ¶ 68.

Three hours later, the officers let Plaintiff go. *Id.* at ¶ 70. They charged him with possessing a dangerous weapon, claiming—falsely—that they had retrieved a butterfly knife from Plaintiff's pocket. *Id.* at ¶ 53, 72. After Plaintiff accepted an adjournment in contemplation of dismissal ("ACD"), the case was dismissed on June 13, 2016. *Id.* at ¶ 74; Siskind Decl. Ex. C. The incident at the precinct exacerbated a prior injury to Plaintiff's right hand, which he sustained in 2012 when another police officer slammed him into the ground and smashed his hand with a boot. *Id.* at ¶¶ 34, 76. Since the March 2015 incident, Plaintiff has experienced pain that "radiates from his pink[y] to his left arm," as well as significant emotional distress. *Id.* at ¶ 76, 79. Plaintiff

2

reported the incident to the Internal Affairs Bureau ("IAB"), but he never received a response. *Id.* at ¶ 77.

More than three years later, on April 26, 2018, Plaintiff initiated this action. On April 30, 2018, he filed the Amended Complaint. He brings claims under 42 U.S.C. §§ 1981 and 1983 for unequal treatment on the basis of race, illegal search and seizure, excessive force, malicious prosecution, deprivation of a fair trial, failure to intervene, supervisory liability, and municipal liability.[2] Defendant moved to dismiss the Amended Complaint, arguing, *inter alia*, that most of Plaintiff's claims were barred by the three-year statute of limitations and the rest failed as a matter of law. Plaintiff opposed the motion and filed a "cross-motion" for equitable tolling.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *See McDonough v. Smith*, 898 F.3d 259, 264–65 (2d Cir. 2018).

## DISCUSSION

### I.    Section 1981 Claims

Plaintiff asserts claims under 42 U.S.C. § 1981 for the denial of equal treatment on the basis of his race, and for supervisory liability for the police misconduct alleged in the Amended Complaint. He concedes, however, that, under the law of this Circuit, "the express cause of action

---

[2] Plaintiff has since abandoned his claim for malicious prosecution. Pl's. Opp. at ¶ 1 ("[W]e concede the malicious prosecution claim we brought is substantively misplaced, and therefore must be dismissed[.]").

3

for damages created by § 1983 constitutes the *exclusive federal remedy* for violation of the rights guaranteed in § 1981 by state governmental units." *Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir. 2018) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)); Pl's. Mem. of Law at 1–2; Pl's. Decl. at 5–14. Since "§ 1981 does not provide a separate private right of action against state actors," Plaintiff's §1981 claims are dismissed. *Id.* at 621.

**II.    Section 1983 Claims**

**A. Illegal Search and Excessive Force Claims**

Plaintiff also brings claims under § 1983 for illegal search and excessive use of force. Defendant argues that these claims are barred by the applicable statute of limitations. The Court agrees. The statute of limitations for a § 1983 claim is "borrowed from state law, which, in the case of New York, confers only a three-year period." *Duplan*, 888 F.3d at 619; N.Y.C.P.L.R. § 214(5). Each claim under §1983 accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980). For claims of illegal search and excessive use of force, the date of accrual is the date on which the unlawful search or excessive force took place. *Forbes v. City of New York*, 15-cv-3458 (GHW), 2016 WL 6269602, at *3 (S.D.N.Y. Oct. 26, 2016) ("In the context of an excessive force claim, the clock starts running when the use of force occurred. An unlawful search claim accrues at the time of the search.") (internal citations and quotation marks omitted).

Here, Plaintiff's illegal search and excessive use of force claims accrued on March 18, 2015, the date on which the alleged police misconduct took place. As Plaintiff filed this action on April 26, 2018—more than three years after the date of accrual—the claims are time-barred, and are therefore dismissed.

## B. Fair Trial Claim

By contrast, it is not clear from the Amended Complaint whether Plaintiff's claim for denial of the right to a fair trial is time-barred. "[A] fabrication of evidence claim accrues (1) when a plaintiff learns of the fabrication and it is used against him, and (2) his liberty has been deprived in some way." *McDonough*, 898 F.3d at 266 (internal citations omitted). "Because the injury for this constitutional violation occurs at the time the evidence is used against the defendant to deprive him of his liberty, whether it be at the time he is arrested, faces trial, or is convicted, it is when he becomes aware of that tainted evidence and its improper use that the harm is complete and the cause of action accrues." *Id.* at 267.

Here, Plaintiff's fair trial claim is based on his allegation that the officers "falsified a charge that he was in possession of a dangerous weapon"—a butterfly knife, which Plaintiff alleges "does not exist." Am. Compl. at ¶¶ 72–73, 103. It is not clear from the Amended Complaint, however, when Plaintiff learned of this alleged fabrication. Moreover, Defendant has not argued that this claim is barred by the statute of limitations. Accordingly, Plaintiff's fair trial claim, unlike his excessive force and illegal search claims, will not be dismissed as time-barred.

Defendant instead argues that the fair trial claim should be dismissed for failure to state a claim. To state a claim under § 1983 for deprivation of the right to a fair trial, a plaintiff must show that "a police officer create[d] false information likely to influence a jury's decision and forward[ed] that information to prosecutors," causing a deprivation of the plaintiff's liberty. *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997); *see also Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016). Defendant argues that Plaintiff has failed to state a fair trial claim because of apparent internal contradictions within the Amended Complaint. Specifically, although the complaint twice alleges that the butterfly knife did not exist, Am. Compl. at ¶¶ 73 & 103, it elsewhere alleges that the officers "found a butterfly knife in [Plaintiff's] pocket,"

5

and states, in Plaintiff's defense, that "[p]ossession of a butterfly knife is not illegal," *id.* at ¶¶ 53–54. Defendant argues that these latter allegations constitute an "admission" that the officers did, in fact, find a butterfly knife in Plaintiff's pocket, and that therefore the fabrication of evidence claim must fail. Def's. Mem. of Law at 8.

The Court disagrees. Although it is true that the Amended Complaint could have been drafted with greater precision (and less of what appears to be sarcasm), the pleading as a whole plainly alleges that the officers lied about the existence of the butterfly knife in order to fabricate a charge against Plaintiff. Am. Compl. 72–73, 102–07. Construing the allegations in the light most favorable to Plaintiff, as the Court must at this stage, the Amended Complaint states a claim for fabrication of evidence sufficient to survive this 12(b)(6) motion.

### C. Failure to Intervene, Supervisory Liability, and *Monell* Claims

Plaintiff also brings claims against the defendant officers for failure to intervene and supervisory liability, and against the City of New York for municipal liability pursuant to the principles articulated in *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978). These claims are derivative in nature and are therefore dismissed to the extent that they are predicated on Plaintiff's time-barred claims for illegal search or excessive force. *See Dilworth v. Goldberg*, 10-cv-2224 (JMF), 2014 U.S. Dist. LEXIS 106258, at *35 (S.D.N.Y. Aug. 1, 2014) ("In the absence of an underlying constitutional violation, a plaintiff cannot state a claim for supervisory liability or a claim under *Monell*."); *Arbuckle v. City of New York*, 14-cv-10248 (ER), 2016 U.S. Dist. LEXIS 136857, at *41–42 (S.D.N.Y. Sept. 30, 2016) ("[A] failure to intervene claim is contingent only on the underlying claim."). To the extent that they are instead predicated upon Plaintiff's surviving claim for deprivation of the right to a fair trial, they are dismissed for failure to state a claim.

First, Plaintiff has pleaded no factual allegations that could support either his claim for failure to intervene or his claim for supervisory liability with respect to the officers' alleged fabrication of evidence. Plaintiff merely alleges that the officers "falsified a charge that he was in possession of a dangerous weapon—i.e., the 'butterfly knife,'" and that they "accused [him] of saying he kept it for his personal protection, which is false." Am. Compl. at ¶¶ 72–73. Plaintiff does not allege that any officer—other than the ones who personally falsified the charge—had any "realistic opportunity to intervene to prevent the harm from occurring." *Case v. City of New York*, 233 F. Supp. 3d 372, 402 (S.D.N.Y. 2017) (internal quotation marks omitted). Nor does he allege that any of the defendants were in a supervisory role and were "personal[ly] involve[d]" in falsifying the charge against him. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Accordingly, Plaintiff's claims for failure to intervene and supervisory liability are dismissed.

As to the *Monell* claim, Defendants argues that Plaintiff's allegations are too vague and conclusory to plausibly allege that the City maintained a policy or custom that caused the deprivation of Plaintiff's constitutional rights. The Court agrees. "In order to hold a municipality liable under 42 U.S.C. § 1983, [P]laintiff must prove that a municipal policy or custom caused the deprivation of his constitutional rights." *D'Attore v. New York City*, 10-cv-3102 (JSR) (MHD), 2011 WL 3629166, at *11 (S.D.N.Y. June 2, 2011), *report & recommendation adopted as modified*, 2011 WL 3629018 (S.D.N.Y. Aug. 17, 2011). "A plaintiff may satisfy the 'policy or custom' requirement by alleging one of the following: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide

7

adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with municipal employees." *Tieman v. City of Newburgh*, 13-cv-4178 (KMK), 2015 U.S. Dist. LEXIS 38703, at *36 (S.D.N.Y. Mar. 26, 2015). To survive a motion to dismiss, a plaintiff must allege facts—not merely conclusory assertions—that "tend[] to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Id.* at *38. Moreover, a plaintiff must allege a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation"—that is, the plaintiff must show that "through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." *Berry v. Vill. Of Millbrook*, 815 F. Supp. 2d 711, 717 (S.D.N.Y. 2011).

The allegations in the Amended Complaint fall short of these requirements. Apart from its conclusory assertions to the effect that "[t]he police in this City are practically immune from discipline," Am. Compl. at ¶ 14, the Amended Complaint sets forth the following factual allegations to support municipal liability: (1) an incident in which an officer smashed a radio into a person's head and fabricated a charge of resisting arrest, but received no discipline; (2) an incident in which an officer was given only a conditional discharge after pushing a bicyclist into the road and lying about how he got injured; (3) an incident in which a police officer was convicted of manslaughter but received only probation; and (4) two incidents in which the IAB conducted improper investigations into alleged police misconduct. *Id.* at ¶¶ 5–13. The Amended Complaint also references a "log of police discipline published on Buzzfeed," which, according to Plaintiff, "shows that between 2011 and 2016, most officers who were found guilty of misconduct merely forfeited vacation days." *Id.* at ¶ 4.

These allegations are alone insufficient to state a claim for municipal liability for the Plaintiff's surviving claim for deprivation of his right to a fair trial. It is true that "the persistent

8

failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell.*" *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983). However, "a failure to discipline constitutes a municipal custom 'only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need.'" *Hicks v. City of Syracuse*, 17-cv-475, 2018 U.S. Dist. LEXIS 203686, at *13 (N.D.N.Y. Dec. 3, 2018) (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)).

Here, Plaintiff's factual allegations amount to a handful of instances, in varying factual contexts, in which the City allegedly failed to properly discipline officers for their purported misconduct. These allegations, "spread over a period so long in a city so large, hardly suggest[] the frequency or pervasiveness of the purported custom that is required to state a *Monell* claim." *Walker v. City of New York*, 12-cv-5902 (PAC), 2014 U.S. Dist. LEXIS 42272, at *6–7 (S.D.N.Y. Mar. 18, 2014) (holding that the filing of ten similar excessive force complaints against the City over a span of ten years did not suffice to state a *Monell* claim). Moreover, by failing to state when the alleged incidents of inadequate discipline took place, or how those incidents were causally related to the misconduct alleged here, Plaintiff has failed to plausibly allege that the City's disciplinary shortcomings in those cases were the "moving force" behind the deprivation of Plaintiff's constitutional rights. *See Mosca v. City of New York*, 17-cv-4327 (SJF) (SIL), 2018 U.S. Dist. LEXIS 216885, at *15 (E.D.N.Y. Dec. 26, 2018), *report & recommendation adopted in relevant part*, 2019 U.S. Dist. LEXIS 30395, at *8–10 (S.D.N.Y. Feb. 25, 2019) ("In order to plausibly allege a pattern of similar violations, a complaint must reference comparable incidents that occurred *prior* to the events in question and cannot rely on events that post-date the subject

9

act of alleged misconduct"); *Hicks*, 2018 U.S. Dist. LEXIS 203686, at *13–14. To the extent that Plaintiff relies on his allegations concerning the discipline log published by Buzzfeed to support his *Monell* claim, those allegations are likewise insufficient because they are devoid of detail concerning the nature of the underlying conduct, when that conduct occurred, whether the discipline imposed was inadequate, or how such inadequate discipline was causally related to the deprivation of Plaintiff's constitutional rights. Plaintiff's *Monell* claim is, accordingly, dismissed.

Because it is possible that, if given the opportunity to re-plead, Plaintiff could assert facts plausibly supporting his claims for municipal liability, supervisory liability, or failure to intervene, dismissal of these claims is without prejudice. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). If Plaintiff re-pleads these claims, however, he must plead factual allegations connecting them to his sole surviving claim for deprivation of the right to a fair trial. *See Mangum c. City of New York*, 15-cv-8810 (PAE), 2016 U.S. Dist. LEXIS 119213, at *19–20 (S.D.N.Y. Sept. 2, 2016) (dismissing a *Monell* claim because the underlying § 1983 claims were untimely, and noting that "[a] plaintiff may not challenge a municipal custom or policy without alleging an actionable violation of his constitutional rights caused by that policy.").

### III. Equitable Tolling

Plaintiff argues that the limitations period for his time-barred § 1983 claims should be equitably tolled. Equitable tolling is appropriate only in "rare and exceptional circumstances" where (1) "extraordinary circumstances prevented a party from timely" filing, and (2) that party "acted with reasonable diligence throughout the period he sought to toll." *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (internal quotation marks and brackets omitted). Plaintiff argues that he is entitled to equitable tolling because (1) he never heard back from the IAB after he filed a complaint with them in 2015, (2) he believed another attorney was representing him for a portion

10

of the limitations period, and (3) he suffered a hand injury that prevented him from finding an attorney. These circumstances do not warrant tolling the statute of limitations as a matter of law.

First, the IAB's failure to provide Plaintiff with the results of its investigation was neither extraordinary nor a circumstance that prevented Plaintiff from timely filing a complaint in federal court. Not only does filing a complaint with the IAB not toll the statute of limitations, but Plaintiff's failure to follow up with the IAB, or to otherwise pursue his claims in the absence of learning the results of the investigation, supports the conclusion that he did not pursue his claims with reasonable diligence throughout the limitations period.

Second, Plaintiff's arguments concerning his relationship with an "ambulance-chasing" attorney indicate neither that he was prevented from timely filing his complaint nor that he pursued his claims with reasonable diligence. Even if Plaintiff believed that this attorney had agreed to represent him on this case, he did not display reasonable diligence in allowing her to represent him for two years without ever filing a complaint. Moreover, once Plaintiff affirmatively learned that the attorney was not representing him, he still had five months before the close of the limitations period to file a complaint in this Court. Plaintiff provides no explanation for his failure to file within that five-month time period.

Finally, the Court is not persuaded by Plaintiff's assertion that his delay can be explained, even in part, by his hand injury. The cases Plaintiff cites in support of the proposition that a medical condition may, in certain circumstances, warrant tolling the statute of limitations involved serious conditions that could reasonably be expected to interfere with one's ability to pursue a legal claim. *See, e.g., Brown v. Parkchester S. Condos.*, 287 F.3d 58, 60–61 (2d Cir. 2002) (involving a mental disability that impeded the plaintiff's ability to complete complex tasks); *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010) (involving mental illness). No such

11

condition is at issue here. Plaintiff suffered an injury to his hand that made it difficult for him to type or make phone calls. A person acting with reasonable diligence under such circumstances would have, at some point during the three-year limitations period, found a way to pursue his claims—perhaps with the help of a friend or family member, or through the use of his other hand.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted with respect to Plaintiff's § 1981 claims, as well as with respect to his § 1983 claims for illegal search and seizure, excessive force, failure to intervene, supervisory liability, and municipal liability. Defendant's motion to dismiss is denied with respect to Plaintiff's claim under § 1983 for deprivation of the right to a fair trial. Plaintiff's motion for equitable tolling is denied. To the extent he has a good faith basis to do so, Plaintiff is granted leave to re-plead his claims for failure to intervene, supervisory liability, and municipal liability. As explained above, any amended pleading must support these claims with factual allegations connecting them to Plaintiff's sole surviving claim for deprivation of the right to a fair trial.

If Plaintiff intends to file a second amended complaint, he shall do so no later than April 29, 2019. The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 15, 18, and 22.

SO ORDERED.

Dated: March 31, 2019
New York, New York

Ronnie Abrams
United States District Judge