UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Deshawn Daniel,<br><br>    Plaintiff,<br><br>v.<br><br>Detective Brian Taylor, Detective James Cleary, Sergeant Wesley Fradera, Detective Neil Magliano | *Jury Trial Demanded*<br><br>Case No. 18-cv-3717 (RA) |

Plaintiff, by and through his attorney, Gregory Antollino of Antollino, PLLC, hereby files this Complaint against defendants, and states as follows, including claims dismissed with notation for a simple narrative and preservation on appeal:

1.    Under 42 U.S.C. 1981, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to . . . sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

2.    Perhaps there are other limits to discriminatory harassment in police regulations, but they are barely enforced. The Civilian Complaint Review Board workers used to recommend discipline, rejected by the actual commission or by

1

the police command. A recent log of police discipline published on BuzzFeed available at https://tinyurl.com/yaemvtaf shows that between 2011 and 2016, most officers who were found guilty of misconduct merely forfeited vacation days (this is based on an random search and a one-year suspension was imposed in one case). A more comprehensive search can be done.

3. The police in this City are practically immune from discipline that deters, even after the end of stop and frisk, they know they can get away with arresting people without probable cause and abuse of power, especially if the arrestees are black or Hispanic

4. The statute, 42 U.S.C. § 1981, does not exempt officers from discriminatory harassment. In fact, the law makes clear that § 1981 applies to private actors as well as those acting under color of state law. It is time to start using this statute to reign in the abuse of the police of this City, who target men and women of color as a matter of course deprive them of due process and equal protection of the laws. We need to call policing what it is in this City: Institutionalized racism engendered to promise those with means that they are safe in their neighborhoods, even though crime has significantly declined.

5. It was only until 2017 that the NYPD admitted to using quotas or "goals" in the issuance of summonses so they can flout their activity.

6. This allows the City to arrest more people and issue more summonses,

because if everyone stood their ground and demanded their right to a criminal court judge, or a trial, not a single misdemeanor would be tried, perhaps defendants could refuse to plea and bring the system to a halt.

7. In the meantime, the brutality officers of the NYPD – most of whom do not live in New York City or have any contact with the community they police – inflict grotesque harm on the unlucky arrestees, as we shall see.

## THE PARTIES, JURISDICTION AND VENUE

8. Plaintiff repeats and realleges all previous paragraphs.

9. Plaintiff, a black man in his thirties, and a resident of the Bronx stands 5'6" and weighs 120 pounds.

10. The City of New York is a municipal corporation. The individual defendants are employees of the NYPD whose residences are unknown.

11. Jurisdiction is brought under the federal question doctrine and venue is proper because the events took place in this district.

## FACTUAL ALLEGATIONS

12. Plaintiff repeats all previous paragraphs.

13. Plaintiff is used to being harassed by the police, but he was never injured by them until 2012 when he was falsely accused of being in the park after midnight.

14. This was a lie in any case. Plaintiff was on the sidewalk next to the park, but because of the quota system he protested and was slammed into the ground, his hand

3

smashed with a boot causing an injury known as "Mallet Finger." This makes his pinky droop and cause sharp pain. He is right-handed, and it was his right pinky.

15. He filed suit, stood his ground and got a decent settlement. No priors, though it probably still was not enough.

16. He bought a used 500 Mercedes CLK year 2005, convertible, with part of the settlement money, and it's a nice car.

17. The officers who caused the Mallet finger were not disciplined.

18. The Mallet finger over time required at least 15 doctor visits, and caused severe pain, making it difficult to manipulate small objects like cellphones and computers.

19. On March 18, 2015, he was obeying all traffic (and other) laws as he turned his onto Adam Clayton Boulevard from the Macomb's Bridge which starts in the Bronx.

20. Undercover and uniformed police officers – defendants above – were stationed near the Domino's Pizza at 148th Street. The car was unmarked, but the officers took out their red and blue siren and signaled plaintiff to pull over as he approached.

21. Plaintiff complied and provided his license and registration. The officers checked out his information on the computer, in which it is believed they were able to see his previous false arrest.

22. Even sealed arrests – the majority of which result from false arrests of people of color – are not sealed to the eyes of the police. Why? That is a violation of the due process rights of the arrestees.

23. Under the Criminal Procedure Law, a dismissed arrest is supposed to be a nullity. But if a police officer can see it in determining whether there is probable cause, that's hardly a nullity. Any cop will assume a sealed arrest was a good one.

24. As such, notwithstanding that the previous arrest resulted not only in no conviction, it was used against plaintiff in the officer's probable cause analysis.

25. A black man with an arrest record – not conviction record, but arrest record – driving a Mercedes? As alluded to above, there must be something up with that.

26. Let's put it on the table: This is federal court, but we know the reality of the racial situation and let's not pretend to be verbally decorous; federal court is here to protect people like Mr. Daniel.

27. After reviewing his papers, the officers returned to the vehicle and asked plaintiff to step out of the vehicle.

28. They said he was being booked for making an illegal left turn on the Macomb's Bridge, but this was a lie: First, they couldn't see that he what he had done from 7 blocks away in the dark (it was about 8). Second, a left turn (or a slight right onto Seventh Avenue) was the only legal turn to make. After the bridge, you have three choices: Take a left on Macomb's Place, which – if the police were suspicious of the

black man in a Mercedes, they would have required a chase; straight (or a slight right) onto 155th, which would also have required a chase if the officers wanted to start a fight; or a left onto 7th Avenue, which plaintiff legally took, and which brought him to defendants at a Domino's Pizza seven blocks away. (The only other alternative as far as driving was concerned would have been to go over the barrier on the bridge and drive against traffic.)

29.     The cops opened the door and pulled him out. From that point, they searched Mr. Daniel and put him in the back of their car. Then they searched his vehicle without consent.

30.     One officer asked, "How you own a Mercedes convertible?" In fact, plaintiff is used to this question as well as being harassed by the police – it is a continuing course of their conduct.

31.     The officers did not find anything in the vehicle but took plaintiff to the local precinct and towed the car there as well.

32.     At the precinct – the 30th, upon information and belief – the officers said they had to do a strip search of plaintiff. There was no probable cause for this other than that he was black with a Mercedes and had had a previous arrest. Oh yes, and they also found a butterfly knife in his pocket.

33.     Possession of a butterfly knife is not illegal because it "requires manual locking." *People v. Dreyden*, 15 N.Y.3d 100, 104 (2010).

34. The officers put him in a cell where he stayed for two or three hours.

35. They returned and made him remove his clothes off right there in front of other prisoners in the holding cell.

36. They handcuffed him, placed and held him on a table in his boxer shorts.

37. Plaintiff said, "this is crazy" and "oh my god this is not right!"

38. His genitals were showing out of the loose boxer shorts.

39. They searched his naked body from the exterior, then put him on a wall where the mugshots and fingerprint imaging are processed.

40. One of the four officers put on an unlubricated latex glove and tried to do an anal cavity check.

41. Plaintiff refused and turned around, so his ass was against the wall. The idea! There was not a shred of evidence that he had contraband secreted in his rectum, but the police tried to probe inside anyway, whenever they can. It is a good place to store contraband, as one defendant admitted to the CCRB, but there was no probable cause for this specific check.

42. Then defendants picked up plaintiff and slammed him on the table and twisted his arm, which was bleeding.

43. He refused.

44. Defendants then slammed him on the table and once they put him on the table there were three or four officers holding him down. He was hit with such force that

he screamed in pain and was bleeding because the handcuffs were still on and his hands were twisted.

45. Of four officers, they ranged from 5'8" and stocky to over six feet and pumped. They were two Caucasians and two Hispanic Caucasians.

46. The officers knew they couldn't perform the cavity search without a warrant or without at least his "implied" consent, so they gave up, but not without significant harm to the plaintiff.

47. They told him to put his clothes back on and put him back in the cell. He wanted medical attention but was told that he was going to be leaving soon and could get it himself (he did and took pictures).

48. Realizing this was another NYPD mess up that they would not be punished for, the officers dolefully offered chips and soda to plaintiff, which he refused.

49. After three hours, they let him go, but gave a paper for his items, which included less than the cash that he had on him.

50. Sheepishly, these criminals – i.e., the police officers – told him to wait.

51. They muttered behind the counter and gave him the $100 they had taken.

52. They falsified a charge that he was in possession of a dangerous weapon – i.e., the "butterfly knife," possession of which the highest court in the state denies is a crime.

53. What's more, there was no such knife. The officers accused his of saying he

kept it for his personal protection, which is false. He was not Mirandized in any case.

54.     His case was dismissed on 6/13/16. During the time of the detention, the attempt at an anal cavity probe and the present, plaintiff has been to the hospital over 15 times. His Mallet Finger was exacerbated such that he cannot lift more than three pounds with his bad hand, two pounds more than a cell phone.

55.     He got into two car accidents between then and now, making it extremely difficult to manipulate objects, and do anything with his hands. The first accident caused a herniated disk for which he has had two epidurals; the second injured his left thumb.

56.     What is certain, though, is that the incident at the 30th Precinct exacerbated the injury to his right hand such that the pain now radiates from his pink to his left arm.

57.     He reported the March 15 incident to Internal Affairs. He was visited by police officers and asked to pick out names. The case was referred to the CCRB and each officer "testilied" against him.

FIRST CAUSE OF ACTION

<u>42 U.S.C. § 1981</u>

<u>(previously dismissed but included for narrative clarity on appeal)</u>

58.  Plaintiff realleges the above paragraphs and incorporates them by reference as though fully stated herein.

59.  All persons within the United States have the right to make and enforce contracts, including employment contracts, and to the full and equal benefit of all laws and

proceedings for the security of persons and property as is enjoyed by white citizens.

60. Plaintiff is black and is entitled to Equal Protection and Freedom from violation of the 4th Amendment. As a black man, he is subject to two things when the police with no probable cause accost him: statutory racism and violation of his constitutional rights. These are two causes of action because a white person subject to a violation of § 1983 is not subject to racism (at least not in New York), which is a separate and distinct harm.

61. To relegate racism under color of state law under 42 U.S.C. § 1983 is to deny equal protection of the laws because it ignores then equal harms of racism:

62. Furthermore, all of the police actions as part of a continuing course of conduct and were motivated, at least in part, by plaintiff's race. He fears the police wherever he goes and that simply should not be.

63. As a result of the foregoing, defendants have violated §1981 and plaintiff demands redress.

64. Plaintiff repeats and realleges the allegations set forth in all preceding paragraphs as if fully set forth herein.

65. Defendants acted under color of state law. They had no probable cause to search plaintiff in any manner and Plaintiff was deprived of his rights as secured by the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983

66. As a result of the foregoing, plaintiff has been damaged and demands compensatory and punitive damages.

## SECOND CAUSE OF ACTION
## UNLAWFUL SEARCH AND SEIZURE
## 42 U.S.C. 1981 & 42 U.S.C. § 1983
(previously dismissed but included for narrative clarity on any potential appeal)

67. Plaintiff repeats and realleges the allegations set forth in all preceding paragraphs as if fully set forth herein

68. Defendants acted under color of state law. They had no probable cause to search plaintiff in any manner and Plaintiff was deprived of his rights as secured by the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983

69. As a result of the foregoing, plaintiff has been damaged and demands compensatory and punitive damages.

## THIRD CAUSE OF ACTION
## EXCESSIVE USE OF FORCE 42 U.S.C. § 1983
(previously dismissed but included for narrative clarity on appeal)

70. Plaintiff repeats and realleges the allegations set forth in all preceding paragraphs as if fully set forth herein.

71. Defendants acted under color of state law.

72. Defendants had no probable cause to touch plaintiff in any manner; therefore, any force he might have used was excessive.

11

73.    However, they attempted to strip search him and handcuffed and placed him on a table.

74.    Plaintiff was deprived of his rights as secured by the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983.

75.    As a result of the foregoing, plaintiff has been damaged and demands compensatory and punitive damages.

FIFTH CAUSE OF ACTION
FAILURE TO INTERVENE
42 U.S.C. § 1983

76.    Plaintiff repeats and realleges the previous allegations as if fully set forth herein.

77.    Under color of state law, all officers had a duty to intervene and stop the illegal actions. There actions were taken in concert with each other, but it is impossible to say who was the main actor and who failed to intervene this point without plaintiff's seeing the officers.

78.    As a result of the foregoing, Plaintiff has been damaged and demands compensatory and punitive relief.

SIXTH CAUSE OF ACTION
ATTEMPT TO DEPRIVE PLAINTIFF OF A FAIR TRIAL
42 U.S.C. § 1983

79.    Plaintiff repeats and realleges the previous allegations as if fully set forth herein.

80. Defendants lied about the butterfly knife which does not exist.

81. Defendants lied when they said plaintiff said he used said knife for "personal protection."

82. Defendants did not Mirandize plaintiff in any case.

83. Acting under color of state law, all officers had a duty to intervene and stop the illegal actions.

84. As a result of the foregoing, Plaintiff has been damaged and demands compensatory and punitive relief.

WHEREFORE, Plaintiff respectfully request that this Court find against Defendant as follows:

    a. Award Plaintiff the value of all compensatory damages as a result of emotional distress, physical pain and suffering and loss of reputation;

    b. Award punitive damages;

    c. Award Plaintiff prejudgment interest and attorneys' fees, costs and disbursements, as provided by law;

    d. Award Plaintiff such other relief as this Court deems just and proper.

Dated: New York, New York
April 24, 2019

By: /s/ Greg S. Antollino
Gregory Antollino, Esq.
Attorney for Plaintiff