UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
**Deshawn Daniel,**

                                                                                 **PLAINTIFF'S**
                                                                                   **MEMORANDUM**
                                                                                   **IN RESPONSE TO**
                                                                                   **DEFENDANT'S SECOND**
                                                                                   **MOTION TO DISMISS**

               **Plaintiff,**

      - v-                                                        Case No. 18-cv-03717 (RA)

**James Cleary, Wesley Fradera, Brian Taylor,**
**Wesley Fradera, Neil Magliano,**

               **Defendants.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff, through his attorney, now responds to defendants' motion to dismiss. Defendants make, as I see it, four arguments in support of this motion. All these arguments dance around the statute of limitations and the law of the case.[1]

     **I.   The Statute of Limitations About Denial of a Right to a Fair Trial.**

The first argument by the defense is that plaintiff has not shown that the information that goes to the denial of a fair trial claim was within the three years of the filing date of the original complaint, April 26, 2018. This contention mischaracterizes the pleadings, the court's March 31 ruling, and the facts within plaintiff's knowledge then or currently. True, plaintiff received a summons on March 18, 2015. However, there is no showing he knew or should have known that the officer transmitted information to the prosecutor at any time before the return date of the summons, April 26, 2019.

---

[1] Plaintiff has abandoned the *Monel* claim. The other dismissed claims plaintiff repeats in the second amended complaint (and named as dismissed in the second amended complaint) solely for the sake of the narrative, on appeal. Their existence is a nullity, no prejudice to defendant, and the court should deny this part of the motion as moot.

1

Despite that plaintiff received the summons on March 28, 2015, that date does not necessarily correspond to plaintiff's knowledge. While it could, the defense would have to show that plaintiff knew the summonsing officer transmitted information to the prosecutor on or before April 18, 2015, three years from the date of this filing. The defense has not shown that. The date of arraignment was April 28, 2015, which is the earliest date – in the absence of evidence to the contrary – that plaintiff should (or could) have known that the officer transmitted information to the prosecutor.

That the DAT tells the defendant the charge charging for which is charged means nothing. The question is whether plaintiff knew or should have known the police officer transmitted the information to the DA. The New York Court of Appeals decision in *People v Stirrup,* 91 N.Y. 2d 434 (1998) discusses circumstances showing it is unknowable when a summons defendant should know an officer transmitted information to the prosecutor. *Stirrup* adopted the view of two lower courts that "once a defendant appears in response to a DAT, the criminal action is deemed commenced for ready-trial purposes," and the court acquires jurisdiction over the defendant. *Id.* at 439 (emphasis in original). The holding in *Stirrup* was about New York Criminal Procedure Law § 30.30 (statutory speedy trial). CPL § 30.30 is not at issue in this case, and plaintiff discusses *Stirrup* solely to show how the police routinely work with prosecutors. In *Stirrup,* the defendant was arrested

> on December 23, 1992 . . . .and was issued a desk appearance ticket (DAT) directing him to appear in court on January 22, 1993. defendant appeared on the return date, but no accusatory instrument had yet been filed or even prepared, despite the mandate of CPL 150.50 (1), which requires police officers who have issued desk appearance tickets to file (or caused to be presented) an accusatory instrument at or before the return date of the DAT. The defendant was instructed to return on March 4.

*Stirrup,* 91 N.Y.2d at 436. The Court of Appeals in that case dismissed the indictment under § 30.30 because the prosecution would have only been within the speedy trial clock if a court had

2

considered the time before the arraignment as chargeable to the prosecution. *Id.*

Thus, there is usually no telling to any defendant when an officer transmits information to the prosecutor – at least rarely, and certainly not on this record. Who knows when this plaintiff should have known the Desk Officer dispatched a report to the prosecutor? Was it before the arraignment? (At arraignment, plaintiff could not defend this motion. But that is the only date that is certain he should have known the officer transmitted the information.)

For the defense to succeed on this plank of its motion, it would have to show more than that a police officer h=gave Mr. Daniels a DAT with the specified charges. It must also show he knew or should have known that the officer transmitted the information to the prosecutor. On this record, the earliest date is the arraignment, which is inside the statute of limitations. There has already been ample discovery in this case, and the record is unsealed. The defendants, however, have shown not even a soupçon of hearsay on this point. Thus, the date plaintiff knew or should have known that the officer transmitted the DAT to the prosecutor is not earlier than the arraignment date of April 28, 2015.[2]

As an attorney who has appeared in the summons part maybe twenty times, I know that often the prosecutor is not ready to proceed, and the clerk will tell the defendant to go home. It is inherently unknowable why the DA might not continue on the return date of the summons. There are also times when, a clerk tells a summons defendant to come back on a future date. Additionally the clerk gives a note to the summons defendant stating, in effect, that the he is not required to return on an exact date, but that if the DA changes his mind, he will send a notice to the defendant by mail to come on another day. Finally, third, there are times a defendant that the case will not proceed. There is no way of knowing why the DA chooses this course of action in any of these

---

[2] I mistakenly named Mr. Daniels as Mr. Daniel in the original complaint.

scenarios, nor when the officer transmitted – if the officer did submit – the information to the DA.

In this case, the defendants could have created, at least, at a minimum, an issue of fact to when the officer transmitted the information to the DA (i.e., that it was before three years of April 26, 2018, the date of the filing of this complaint). Subject to verification, and assuming an officer would declare under penalty of perjury the exact date he transmitted the information to the prosecutor, the plaintiff might not have a defense to such a declaration. However, the defendants chose not to make this a motion for summary judgment in place of dismissal. Instead, it hops around the available record and does not show that the statute of limitations has expired as to the Denial of Fair Trial Claim. The defense should not be allowed to offer new evidence on reply.

## II.  Failure to Intervene.

The failure to intervene claims are derivative of the fair trial claim. Since it is unknowable on this record when the arresting officer transmitted the information to the prosecutor, the court must infer from the pleadings that the other three officers had up until the arraignment date – April 28, 2015 – to intervene. All three officers had the opportunity to intervene and prevent Mr. Daniels from being subject to a loss of liberty, as defined by your Memorandum Opinion of March 31, 2019, wherein you stated that the accrual of the fair trial claim starts when plaintiff's

> liberty has been deprived in some way. . . .Because the injury for this constitutional violation occurs at the time the evidence is used against the defendant to deprive him of his liberty, whether it be at the time he is arrested, faces trial, or is convicted, it is when he becomes aware of that tainted evidence and its improper use that the harm is complete and the cause of action accrues.

*Id.* (citing *McDonough v Smith,* 898 F.3d 259, 267 (2d Cir. 2018). "But the [criminal] defendant's role makes no difference when the claim accrues. The separate and distinct harm that malicious prosecution claims are designed to address afforded McDonough a remedy to the extent that he

4

alleged that fabricated evidence was created to prosecute him maliciously and without probable cause. *See id.* (discussing claim based on prosecutor's fabrication of evidence).

The Supreme Court will soon define the exact contours of this rule in the same case, *McDonough v. Smith,* Docket Number 18-485, argued 4/17/19. The decision could be affirmed, expanded, or reversed. The argument was last heard by me on June 2, 2019. It is available at https//www.supremecourt.gov/oral_arguments/audio/2018/18-485. Both parties expect you to follow that decision – which hopefully, will not require more briefing – after the Supreme Court's decision, expected to be decided by the end of June.

**IV.   The Defendants' Points on the John Does and the Law of the Case.**

The court and defense counsel know what the "law of the case" means. Plaintiff filed his case with John Does ## 1-5. The Court dismissed the John Doe defendants on March 31, 2019 but gave plaintiff until April 29, 2019 to get their actual names. I am afraid I have to disagree with the defendants' characterization of my ability (or lack thereof) to confer with Corporation Counsel on the names of the John Does, but one thing is sure. I was able to amend the complaint by the date requested, even though the court allowed the parties to report to by April 22, 2019, if I needed more time to amend.

The defendants were able to tender the names soon enough for me to comply with the court's March 31 order. However, when it came to service of the complaint, once again – something I do not consider correct – the defense asserted that I could not call what is known as "The Wheel" to find out where the officers are stationed. I abided by defense counsel's instruction to avoid noise about this issue, and I feel queasy in calling The Wheel in the future unless an ethics decision comes down holding that I cannot or that I can. I believe that any such rule that I cannot contact a state actor who is the target of a complaint was made up by whole cloth by the Special

5

Federal Litigation Division, which has invented the fiction that – though it does not represent an individual officer – I am precluded from contacting an unrepresented party. There is not one decision stating as much, and I challenge the defense to come up with one. Mr. Akina's department once accused me, in open court, of violating ethical rules for having contacted a police employee whom I intended to serve with a complaint. I do not want that accusation. Though it is beyond the scope of this motion, I do want to see a rule that I must follow Special Federal Litigation's imagination. I see none, yet the defense suggests that I had to have known of the names of the John Does before filing this complaint. As Judge Judy would say, that's baloney.

This discussion is relevant to the John Doe prong of the motion to dismiss, which in part suggests a plaintiff or his attorney has any ability to get the names of the officers before filing the complaint. But under the tides of these filings, I would be impeded by my adversary, who told me in an email, "[p]lease provide me with affidavits of service so that I can move forward to decisions on representation." Email, May 20, 2019, from William Akina to Gregory Antollino. I abided by his instruction. Mr. Akina then directed me to serve two of the officers at 1 Police Plaza. When I the Corporation Counsel directs to serve at Police Plaza, it means either that the officer is at a secret precinct, or that the she has retired. But now I have found that even walking into Police Plaza might be fraught with peril. In this case, my process server, Jerry O'Neill, an African American [a "male black"] went into Police Plaza, and he knew exactly what was in his backpack. He then went through the metal detector, went upstairs, served the complaints on two officers, and left Police Plaza. Shortly thereafter, he looked inside his bag. He knew that the only time anyone had handled his bag was the time the police officers at the entrance at Police Plaza took it from him and sent it through a metal detector. When he left One Police Plaza, he shortly thereafter found a strange candy in his backpack; we suspected it was contraband. (Jerry and I discussed the

6

suspected was contraband over and over. I told him nothing would happen if he or I reported it. I am too cynical to think anything will happen by this report, but I must get proximate to this ugly reality. I can no longer send Jerry to Police Plaza, and no other process server without revealing what happened to Jerry.) Despite these continuing perils, which no official of the City of New York or any judge can or wants to control, the Special Federal Litigation Division expects a plaintiff to know the names of each officer before filing a complaint. That sometimes can happen well before the statute of limitations expires, but sometimes not, as in this case.

Given all of the barriers a plaintiff must hurdle to get the actual names of John Does, and despite the law of the case, defendant suggests that the court should not even have given leave to plaintiff to identify the John Does by April 29, 2019. This suggestion is folly, tantamount to the idea that a plaintiff who does not know the names of John Doe's will always need a cushion – a perhaps a couple of months – before filing a complaint to discover the names of unknown officer defendants.

Without getting into the wildflowers of defendants' arguments, the plaintiff will rely on the law of the case and irrefutable logic that its position is madness.

**V.   Conclusion.**

For these reasons, the court should deny the motion in all respects.

Dated      New York, New York
           June 2, 2019

*Greg S. Antollino*
GREGORY ANTOLLINO
Antollino, PLLC
275 Seventh Avenue, Seventh Floor
New York, NY 10001
(212) 334-7397
gantollino@nyc.rr.com

7