```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 3/11/20
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DESHAWN DANIELS,

                         Plaintiff,

-v-

DETECTIVE BRIAN TAYLOR, DETECTIVE JAMES CLEARY, SERGEANT WESLEY FRADERA, and DETECTIVE NEIL MAGLIANO,

                         Defendants.

No. 18-CV-3717 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

    Plaintiff Deshawn Daniels brought this action against the City of New York and five police officers, Detective Brian Taylor, Detective Brian Taylor, Detective James Cleary, Sergeant Wesley Fradera, and Detective Neil Magliano, for alleged violations of his constitutional rights arising out of a March 18, 2015 traffic stop. On March 31, 2019, the Court granted in part and denied in part the City of New York's motion to dismiss, denied Plaintiff's motion for equitable tolling, and granted Plaintiff leave to file a Second Amended Complaint on his sole surviving claim as well as two claims that were dismissed without prejudice. Dkt. 33. On April 29, 2019, Plaintiff filed his Second Amended Complaint. Dkt. 47. Before the Court is the Defendants' motion to dismiss the Second Amended Complaint. Dkt. 66. For the reasons that follow, Defendants' motion is granted.

## FACTUAL BACKGROUND

    The following facts, taken from Plaintiff's Second Amended Complaint, Dkt. 47, are assumed true for purposes of this motion to dismiss unless otherwise noted. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

On March 18, 2015, Plaintiff, a black man in his thirties, was pulled over by undercover police officers stationed near the corner of 148th Street and Adam Clayton Powell Jr. Boulevard in Manhattan. Second Am. Compl. ¶¶ 9, 19, 20. The officers asked Plaintiff to step out of his vehicle and told him that he was "being booked" for making an illegal left turn approximately seven blocks north of where he was pulled over. *Id.* ¶¶ 27, 28. The officers opened Plaintiff's car door, pulled him out of his car, searched him, placed him in the back of the officers' car, and searched his vehicle without his consent. *Id.* ¶ 29. One officer allegedly asked him, "How you own a Mercedes convertible?" *Id.* ¶ 30.

The officers brought Plaintiff back to the local precinct and placed him in a cell for two to three hours. *Id.* ¶¶ 31, 34. They told him they had to perform a strip search. *Id.* ¶ 32. They required him to remove all of his clothing except his underwear in front of the other individuals in the holding cell, handcuffed him, and held him down on a table. *Id.* ¶¶ 35–36. Plaintiff responded by telling the officers, "this is crazy" and "oh my god this is not right!" Id. ¶ 37. The officers searched Plaintiff, put him against a wall, and one of the officers attempted to conduct an anal cavity check while wearing an unlubricated latex glove. *Id.* ¶¶ 39-40. Plaintiff turned his backside against the wall so that the officer could not perform the cavity check. *Id.* ¶ 41. The officers then picked Plaintiff up, slammed him onto the table, and twisted his arm. This action caused Plaintiff's arm to bleed because his handcuffs were still on. *Id.* ¶¶ 42, 44. Plaintiff screamed in pain while three or four officers held him down on the table. *Id.* ¶ 44. The officers then told Plaintiff to put his clothes back on and they put him back in his cell. *Id.* ¶ 47. When Plaintiff requested medical attention, the officers responded that he would be leaving soon and could get medical attention himself. *Id.*

2

The officers released Plaintiff three hours later. *Id.* ¶ 49. They returned Plaintiffs' items to him, but initially withheld some of the cash that Plaintiff had on him when he was arrested. *Id.* After muttering to one another, the officers returned $100 in cash to the Plaintiff. *Id.* ¶ 51. The officers provided Plaintiff with a property receipt and a desk appearance ticket. *Id.* ¶ 49; Akina Decl. Ex. B; Akina Decl. Ex. C.[1] Both the property receipt and desk appearance ticket indicated that Plaintiff was charged with criminal possession of a weapon in the fourth degree in violation of New York Penal Law 265.01. Second Am. Compl. ¶ 52; Akina Decl. Ex. B; Akina Decl. Ex. C. On April 14, 2015, Detective Brian Taylor filed a Complaint in New York County Criminal Court charging Plaintiff with a misdemeanor under New York Penal Law 265.01, stating that he "recovered a butterfly knife from the defendant's inside jacket pocket." Second Akina Decl. Ex. G. After Plaintiff received an adjournment in contemplation of dismissal ("ACD") on December 14, 2015 pursuant to New York Criminal Procedure Law § 170.55, the case was dismissed on June 13, 2016. *Id.* ¶ 54; Akina Decl. Ex. D.

---

[1] The Court considers the property receipt that Plaintiff received on the date of his arrest, Akina Decl. Ex. B, because Plaintiff incorporated it into his Second Amended Complaint by reference. *See* Second Am. Compl. ¶ 49 (stating that the officers "gave a paper for his items"); *see also Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.") (internal citations and quotation marks omitted). The Court also takes judicial notice of Plaintiff's desk appearance ticket, Akina Decl. Ex. C, Criminal Court complaint, Second Akina Decl. Ex. G, and certificate of disposition, Akina Decl. Ex. D. Courts in this Circuit frequently take judicial notice of desk appearance tickets. *See, e.g., See, e.g., Luis R. Domeneck v. City of New York et al.*, No. 18 CIV. 7419 (PGG), 2019 WL 5727409, at *2 n.3 (S.D.N.Y. Nov. 5, 2019) (taking judicial notice of a summons); *Mazzone v. Town of Southampton*, 283 F. Supp. 3d 38, 49 (E.D.N.Y. 2017) (taking judicial notice of a desk appearance ticket), *report and recommendation adopted as modified*, No. 16-CV-4515 (JFB) (ARL), 2017 WL 6017357 (E.D.N.Y. Dec. 1, 2017); *Jurkowitsch v. City of New York*, No. 14-CV-6810 (PKC), 2015 WL 8489964, at *1 n.4 (E.D.N.Y. Dec. 9, 2015) (taking judicial notice of a desk appearance ticket and certificate of disposition), *aff'd sub nom. Jurkowitsch v. Choudhury*, 673 F. App'x 44 (2d Cir. 2016). In addition, "it is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including arrest reports, criminal complaints, indictments, and criminal disposition data." *Harris v. Howard*, No. 08-CV-4837 (CM), 2009 WL 3682537, at *2 (S.D.N.Y. Oct. 30, 2009) (internal citations and quotation marks omitted).

The incident at the precinct allegedly exacerbated a prior injury to Plaintiff's right hand, which he sustained in 2012 when another police officer slammed him into the ground and smashed his hand with a boot. Second Am. Compl. ¶¶ 13-14, 18, 54. Since the March 2015 incident, Plaintiff claims to have experienced pain that "radiates from his pink[y] to his left arm" and cannot lift more than three pounds with his bad hand. *Id.* ¶¶ 54, 56. Plaintiff reported the incident to the Internal Affairs Bureau ("IAB"). *Id.* ¶ 57. The Complaint was referred to the Civil Complaint Review Board ("CCRB"). *Id.*

## PROCEDURAL HISTORY

More than three years later, on April 26, 2018, Plaintiff initiated this action. Dkts. 1, 3. On April 30, 2018, he filed an Amended Complaint against the City of New York and five "John Doe" Defendants. Dkt. 4. The Amended Complaint brought claims under 42 U.S.C. §§ 1981 and 1983 for unequal treatment on the basis of race, illegal search and seizure, excessive force, malicious prosecution, deprivation of a fair trial, failure to intervene, supervisory liability, and municipal liability.[2] The City moved to dismiss the Amended Complaint. Dkt. 15. Plaintiff opposed the motion and filed a motion for equitable tolling. Dkts. 22-24.

On March 31, 2019, the Court granted in part and denied in part the City's motion to dismiss. Dkt. 33. Specifically, the Court dismissed Plaintiff's § 1981 claims on the ground that § 1983 is the exclusive private right of action against state actors. The Court also dismissed Plaintiff's § 1983 claims for illegal search and excessive use of force because they were time-barred under the applicable statute of limitations. The Court, however, denied the City's motion with respect to Plaintiff's claim for deprivation of the right to a fair trial under § 1983. The Court

---

[2] Plaintiff abandoned his claim for malicious prosecution. *See* Antollino Decl., Dkt. 23, at ¶ 1 ("[W]e concede the malicious prosecution claim we brought is substantively misplaced, and therefore must be dismissed[.]").

also dismissed Plaintiff's claims for failure to intervene, supervisory liability, and municipal liability but did so without prejudice and granted Plaintiff leave to re-plead the claims, so long as he pled factual allegations connecting them to his sole surviving claim for deprivation of the right to a fair trial. Finally, the Court denied Plaintiff's motion for equitable tolling.

Plaintiff filed a Second Amended Complaint on April 29, 2019 raising claims under § 1983 for deprivation of a fair trial and failure to intervene.[3] Dkt. 47. The Second Amended Complaint does not name the City as a defendant or raise a claim for municipal liability.[4] The City was therefore terminated as a defendant on April 29, 2019.

At the Court's request, the parties filed supplemental briefing addressing the Supreme Court's June 20, 2019 decision in *McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019). Dkts. 77-78.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[3] The Second Amended Complaint also raises claims under § 1981 and § 1983 for unlawful search and seizure and excessive force yet characterizes these claims as "previously dismissed but included for narrative clarity on appeal." As the Court previously dismissed these claims with prejudice, it does not address them again here.

[4] *See* Pl.'s Opp., Dkt. 69, a 1 n.1 ("Plaintiff has abandoned the *Monel* [sic] claim").

## DISCUSSION

I.     **Fair Trial Claim**

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 275 (2d Cir. 2016) (quoting *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123 (2d Cir. 1997)). Plaintiff's fair trial claim is based on his allegation that the officers "falsified a charge that he was in possession of a dangerous weapon"—a butterfly knife—which Plaintiff alleges "does not exist." Second Am. Compl. ¶¶ 52, 53, 80. After having originally been charged with criminal possession of a weapon in the fourth degree in violation of New York Penal Law 265.01, Plaintiff received an ACD on December 14, 2015, and his case was dismissed on June 13, 2016. *Id.* ¶¶ 52, 54; Akina Decl. Ex. D; Second Akina Decl. Ex. G.

The core of the dispute on this motion is whether Plaintiff's ACD bars his fair trial claim in light of the Supreme Court's recent decision in *McDonough v. Smith*. 139 S. Ct. 2149 (2019). On appeal in *McDonough* was a Second Circuit decision holding that "a fabrication of evidence claim accrues (1) when a plaintiff learns of the fabrication and it is used against him, and (2) his liberty has been deprived in some way." *McDonough v. Smith*, 898 F.3d 259, 266 (2d Cir. 2018) (internal citations omitted); *see also id.* at 267 ("Because the injury for this constitutional violation occurs at the time the evidence is used against the defendant to deprive him of his liberty, whether it be at the time he is arrested, faces trial, or is convicted, it is when he becomes aware of that tainted evidence and its improper use that the harm is complete and the cause of action accrues."). The Second Circuit decision in *McDonough* controlled at the time this Court denied the City of New York's motion to dismiss Plaintiff's fair trial claim. Accordingly, this Court declined to

dismiss Plaintiff's fair trial claim on statute of limitations grounds given that it was "not clear from the Amended Complaint . . . when Plaintiff learned of [the] alleged fabrication." Dkt. 33 at 5.

The Supreme Court has since reversed the Second Circuit's decision and held that the plaintiff "could not bring his fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution." *McDonough v. Smith*, 139 S. Ct. at 2156. In reaching this conclusion, the Court followed its established practice of "decid[ing] accrual questions by referring to the common-law principles governing analogous torts," which "are meant to guide rather than to control the definition of § 1983 claims." *Id.* at 2156 (internal citations and quotations marks omitted). The Court determined that malicious prosecution is the most analogous common-law tort to a fair trial claim based on the fabrication of the evidence, because "[a]t bottom, both claims challenge the integrity of criminal prosecutions undertaken pursuant to legal process." *Id.* (internal quotation marks omitted).[5]

Relying on its earlier decision in *Heck v. Humphrey*, 512 U.S. 477 (1984), the *McDonough* Court recognized that a malicious prosecution claim "accrues only once the underlying criminal proceedings have resolved in the plaintiff's favor." *McDonough*, 139 S. Ct. at 2156; *see also Heck*, 512 U.S. at 484. The Court explained that "malicious prosecution's favorable-termination requirement is rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil judgments" and "likewise avoids allowing collateral attacks on criminal judgment through civil litigation." *McDonough*, 139 S. Ct. at 2157 (citations omitted); *see also Heck*, 512 U.S. at 484-85. The Court

---

[5] The Court stated that, "Common-law malicious prosecution requires showing, in part, that a defendant instigated a criminal proceeding with improper purpose and without probable cause. The essentials of McDonough's claim are similar: His claim requires him to show that the criminal proceedings against him—and consequent deprivations of his liberty—were caused by [the special investigator's] malfeasance in fabricating evidence." *McDonough v. Smith*, 139 S. Ct. at 2156 (internal citations omitted).

then held that "[b]ecause a civil claim such as McDonough's, asserting that fabricated evidence was used to pursue a criminal judgment, implicates the same concerns, it makes sense to adopt the same rule." *Id.* The Court reasoned that any alternative holding could force a "significant number of criminal defendants [to] face an untenable choice between (1) letting their claims expire and (2) filing a civil suit against the very person who is in the midst of prosecuting them." *Id.* at 2158.

Importantly, unlike Mr. Daniels who received an ACD here, the plaintiff in *McDonough* was acquitted of the criminal charges. The Court expressly declined to address how its holding applied in circumstances other than an acquittal:

> Because McDonough's acquittal was unquestionably a favorable termination, we have no occasion to address the broader range of ways a criminal prosecution (as opposed to a conviction) might end favorably to the accused. To the extent Smith argues that the law in this area should take account of prosecutors' broad discretion over such matters as the terms on which pleas will be offered or whether charges will be dropped, those arguments more properly bear on the question whether a given resolution should be understood as favorable or not. Such considerations might call for a context-specific and more capacious understanding of what constitutes 'favorable' termination for purposes of a § 1983 false-evidence claim, but that is not the question before us.

*Id.* at 2161 n.10 (internal citations omitted). *McDonough* therefore left unresolved which resolutions of criminal proceedings—other than acquittals—constitute "favorable terminations" in the context of fabricated evidence claims.

The Second Circuit has yet to apply *McDonough* in circumstances in which a plaintiff received an ACD rather than an acquittal. The Circuit law therefore remains unsettled as to whether an ACD constitutes a favorable termination in the context of a fair trial claim based on fabrication of the evidence. The law in the Circuit is clear, however, that "a plaintiff asserting a malicious prosecution claim under § 1983 must . . . show that the underlying criminal proceeding ended in a manner that affirmatively indicates his innocence." *Lanning v. City of Glens Falls*, 908 F.3d 19, 22 (2d Cir. 2018). In the context of malicious prosecution claims, the Circuit has held

8

that an ACD "is not a favorable termination because it leaves open the question of the accused's guilt." *Fulton v. Robinson*, 289 F.3d 188, 196 (2d Cir. 2002) (internal citations omitted); *see also Rothstein v. Carriere*, 373 F.3d 275, 286 (2d Cir. 2004) (dismissing a state-law malicious prosecution claim because "[a] termination is not favorable to the accused . . . if the charge is withdrawn or the prosecution abandoned pursuant to a compromise with the accused") (quoting *Smith–Hunter v. Harvey*, 734 N.E.2d 750, 753 (N.Y. 2000)); *Humbach v. Canon*, No. 13-CV-2512 NSR, 2014 WL 6057703, at *4 (S.D.N.Y. Nov. 12, 2014); *Adam v. Metro. Transp. Auth.*, No. 07 CIV. 8807 JGK, 2011 WL 891441, at *6 (S.D.N.Y. Mar. 15, 2011). In light of the Supreme Court's recognition that malicious prosecution is the most analogous common-law tort to a fair trial claim based on fabricated evidence, this case law must "guide" but not "control" the analysis of Plaintiff's fair trial claim. *McDonough*, 139 S. Ct. at 2156 (quoting *Manuel v. Joliet*, 137 S. Ct. 911, 921 (2017)).

Following *McDonough*, district courts in this Circuit have reached different results with respect to whether an ACD constitutes a favorable termination in the context of a fair trial claim. Ultimately, this Court is convinced that the courts that have held that an ACD bars a § 1983 plaintiff from bringing a fair trial claim based on fabricated evidence have the better of the arguments. The Court finds the reasoning of *Miller v. Terrillion* particularly persuasive. No. 16-CV-52 (ENV) (RLM), 2020 WL 549356, at *4 (E.D.N.Y. Jan. 30, 2020). In *Miller*, the court explained that "a comparison of [malicious prosecution and fair trial] claims through the lens of *McDonough* leads to the inevitable conclusion that [the plaintiff's] fair trial claim is barred by his acceptance of an ACD." *Id.* at *4. As the *Miller* court held, following *McDonough*, acceptance of an ACD forecloses a fair trial claim where that claim "targets the very evidence that would have otherwise been shielded from collateral attack." *Id.* at *6. In *Miller*, the plaintiff challenged an officer's

9

statement that was the "sole basis" for the charge that was brought against him. Here, too, Plaintiff challenges the officers' alleged fabrication of the butterfly knife, which forms the very basis of the charge brought against him for criminal possession of a weapon in the fourth degree. Plaintiff's fair trial claim thus implicates the concerns articulated in *McDonough* and *Heck* about collateral attacks to criminal proceedings.

In *Ross v. City of New York*, by contrast, the court "assume[d], without deciding, that a favorable termination of Plaintiff's underlying criminal prosecution [was] necessary to permit her to bring a fair trial claim, but [found] that Plaintiff can establish that her prosecution was terminated in her favor." No. 17-CV-3505 (PKC), 2019 WL 4805147, at *7 (E.D.N.Y. Sept. 30, 2019). The plaintiff's underlying criminal prosecution in *Ross* was resolved with an ACD. The court held that "although this Court, like many, has found in the context of malicious prosecution claims that an ACD is not a favorable termination, it does not find that this ruling applies to a fair trial claim." *Id.* at *8. The *Ross* court reasoned that, "because fair trial jurisprudence, starting with *Heck* and continuing through *McDonough*, is primarily concerned with the potential for invalidating criminal convictions, the favorable termination requirement for fair trial claims (assuming there is one) is necessarily different and more expansive than the one for malicious prosecution claims." *Id.* The Court respectfully disagrees. *Heck* and *McDonough* recognized the concern with invalidating criminal convictions first in the context of malicious prosecution claims, and only then extended that reasoning to other § 1983 claims after determining that malicious prosecution is the most analogous common-law tort. *See McDonough*, 139 S. Ct. at 2157; *Heck*, 512 U.S. at 480. The concern with invalidating criminal convictions therefore applies, too, in the context of malicious prosecution claims. The *Ross* court does not provide any other meaningful grounds for distinguishing the favorable termination requirement in the context of malicious

10

prosecution and fair trial claims other than noting, in a footnote, that the two claims derive from different constitutional amendments. *Id.* at *8 n.14.

In *Wellner v. City of New York*, another court found that a § 1983 plaintiff's fair trial claim was still viable following *McDonough*—albeit outside the context of an ACD. 393 F.Supp.3d 388 (S.D.N.Y. 2019). The plaintiff in *Wellner* reached an agreement to plead guilty to disorderly conduct and perform ten days of community service in exchange for the prosecutor's agreement to drop the four misdemeanor charges pending against her, including two misdemeanor charges that involved allegedly fabricated evidence. *Id.* at 396. The defendants argued that the plaintiff's fair trial claim failed in light of *McDonough* because her plea deal did not constitute a favorable termination of her criminal proceedings. *Id.* The court disagreed, holding that it was "a paradigm case where [the plaintiff's] claim does not question the validity of her conviction" because the allegedly fabricated evidence applied only to the two charges that were dropped, not the disorderly conduct offense to which she pled guilty. *Id.* at 397. *Wellner*'s holding is distinguishable because Plaintiff's fair trial claim here—like the plaintiff's claim in *Miller*—attacks the very charge for which he accepted an ACD. Plaintiff's fair trial claim therefore "directly challenges—and thus necessarily threatens to impugn—the prosecution itself." *McDonough*, 139 S. Ct. at 2159.

Finally, the Second Circuit has explained that a plaintiff's acceptance of an ACD "extinguishes a malicious prosecution claim . . . because it is a bargained-for dismissal of the criminal case." *Rothstein*, 373 F.3d at 287. "Having bought peace the accused may not thereafter assert that the proceedings have terminated in his favor." *Id.* (quoting the Restatement (Second) of Torts § 660 (1977)). In light of *McDonough*'s recognition that malicious prosecution is "analogous" to a fair trial claim based on the fabrication of the evidence, the Court sees no reason

11

why this principle would not apply with equal force to Plaintiff's fair trial claim. Accordingly, the Court holds that Plaintiff's acceptance of an ACD bars his fair trial claim.

## II. Failure to Intervene

Plaintiff also brings a claim against the Defendants for failure to intervene. This claim is derivative in nature and is contingent on Plaintiff's claim for denial of the right to a fair trial. *Arbuckle v. City of New York*, 14-CV-10248 (ER), 2016 WL 5793741, at *14 (S.D.N.Y. Sept. 30, 2016) ("[A] failure to intervene claim is contingent only on the underlying claim."). The claim is therefore dismissed because the Court dismisses Plaintiff's underlying fair trial claim.

Additionally, as the Court held in its March 31, 2019 Opinion, Dkt. 33 at 7, Plaintiff has pleaded no factual allegations that could support his claim for failure to intervene with respect to the officers' alleged fabrication of evidence. Plaintiff merely alleges that the officers "falsified a charge that he was in possession of a dangerous weapon—i.e., the 'butterfly knife,'" and that they "accused [him] of saying he kept it for his personal protection, which is false." Second Am. Compl. ¶¶ 52–53. Plaintiff does not allege that any officer—other than the ones who personally falsified the charge—had any "realistic opportunity to intervene to prevent the harm from occurring." *Case v. City of New York*, 233 F. Supp. 3d 372, 402 (S.D.N.Y. 2017) (internal quotation marks omitted). The Court previously dismissed Plaintiff's failure to intervene claim without prejudice, stating that "if given the opportunity to re-plead, Plaintiff could assert facts plausibly supporting his claim." Dkt. 33 at 10. Plaintiff, however, has not pleaded any new facts with respect to his failure to intervene claim. Accordingly, Plaintiff's claim for failure to intervene is now dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. The Clerk of Court is respectfully directed to terminate the motions pending at docket entry 66 and close this case.

SO ORDERED.

Dated:    March 11, 2020
             New York, New York

                                                    Ronnie Abrams
                                                    United States District Judge